IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN
_____

DARREN SOLFEST and
STACI SOLFEST,

                            Plaintiffs,

    v.

ARCTIC CAT INC.,

                            Defendant.

OPINION AND ORDER

07-cv-427-slc
_____

      This is a civil action for money damages in which plaintiffs Darren Solfest and Staci Solfest contend that defendant Arctic Cat Inc. is responsible for the injuries plaintiff Darren Solfest suffered when the All-Terrain Vehicle (ATV) he was driving rolled laterally. Specifically, plaintiffs contend that the ATV had a defect that caused the accident or that defendant's negligence in its design of the ATV caused the accident. Currently before the court is defendant's *Daubert* motion to exclude plaintiff's expert Jeffery W. Kuehn. *See* dkt. 42.[1] Because Mr. Kuehn is not sufficiently qualified to testify as an expert regarding the issues in this case and because his testimony is not sufficiently reliable, I am granting defendant's motion.

      The following facts are adduced from both sides' submissions:

BACKGROUND FACTS

   A.  The Accident

      In June 2006, John Trautmiller brought his Arctic Cat ATV in to Polfus Implement, Inc. for service because of "hard steering." Plaintiff Darren Solfest, a mechanic at Polfus, was

---

    [1] Defendant's subsequently-filed motion to exclude plaintiffs' late-named expert (dkt. 65) is on a different track and will be dealt with in a separate order.

assigned to inspect and repair Trautmiller's ATV.  On June 16, 2008, plaintiff took Trautmiller's ATV on a test drive.  During the test drive the ATV rolled, severely injuring plaintiff.  Plaintiff has no memory of these events and there were no eyewitnesses.  This rollover is the basis for this lawsuit against defendant.

### B.  Plaintiff's Expert Jeffrey W. Kuehn

Plaintiff timely disclosed Jeffrey W. Kuehn as his only liability expert.  Kuehn was a mechanics apprentice in 1986.  From 1990 to 1992 he worked at Banashek & Associates, Inc. as an AutoCAD manager/designer.  At Banashek, Kuehn designed HVAC and plumbing systems. From 1992 until 2004, Kuehn worked for Tennill & Associates, Inc.  While working for Tennill, Kuehn went to college at the University of Missouri and obtained a bachelor of science degree in mechanical engineering.  Kuehn served as a senior mechanical engineer/associate at Tennill and his job included designing and working with HVAC and plumbing systems.  Kuehn is a registered professional engineer in Missouri, Illinois and Texas.

In 2004, Kuehn began work as a project engineer for SEA, Ltd.  As a project engineer he is responsible for mechanical engineering projects with emphases on vehicular accident reconstruction, HVAC building systems and fuel-fired equipment.  In 2005 Kuehn received a traffic accident reconstruction certificate from Northwestern University Center for Public Safety after attending the last week of the three week course.  Most of Kuehn's work at SEA, Ltd. involves accident reconstruction, which consists of attempting to determine pre-accident conditions using post-accident evidence.  Since beginning work at SEA, Ltd., Kuehn has worked on over one hundred vehicle accident reconstruction cases; however, he has never worked on a case involving an ATV.

2

### C. Kuehn's Report

In July 2006, plaintiffs hired SEA, Ltd. to inspect the ATV plaintiff was driving during his accident. On August 14, 2006, Kuehn went to Polfus in New Richmond, Wisconsin, to "examine the ATV to determine if any failures or defects in the ATV may have contributed to the cause of the accident." *See* Feb. 22, 2008 Mechanical Examination ("Report"), dkt. 43, Appx. B, at 1. This examination was done by Kuehn outside the presence of any defendant representative. Kuehn took photographs and prepared field notes.

Four months later, on December 18, 2006, Kuehn participated in a joint examination of the ATV with defendant's representatives present. Kuehn documented this examination with field notes and photographs. In addition to these two physical examinations of the ATV, Kuehn reviewed potential witness depositions, a publication titled "ATV Manual," by Dr. D.L. Ryan and John L. Ryan, and 2005 Arctic Cat Service and Operators Manuals. Kuehn used these information sources to prepare his expert report for plaintiff. Defendant received its copy of Kuehn's report on February 22, 2008.

At the end of this report, Kuehn stated that:

> a determination of the definitive causes and contributing factors of the subject accident cannot be determined based on lack of physical evidence or witness accounts, including Mr. Solfest.

Report at 14.

In an April 9, 2008 affidavit submitted to this court, Kuehn confirmed this determination:

> 4. As a result of my investigation and examinations in this matter, I was not able to conclude to a reasonable degree of professional certainty that a manufacturing or design defect existed in the

3

> subject ATV. I also was not able to conclude to a reasonable degree of professional certainty the cause of the subject accident. These findings were clearly indicted in my February 22, 2008 report and in my March 11, 2008 deposition.
>
> * * *
>
> 6. In my report and in my deposition, I indicated I had developed a list of possible contributory causes of the subject accident and was able to reduce that list to three possibilities, including operator error, terrain/traction and differential operation. I also did indicate that from the available information, one of the possibilities (differential operation) was most probable, but was not able to elevate this possibility to the level of an opinion (greater than 50%).

See Affidavit, dkt. 63, Exh. D, at 3.

OPINION

Federal Rule of Evidence 702 and *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579 (1993), govern the admissibility of expert testimony. Fed. R. Evid. 702 states:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

It is the district court's duty to function as a "gatekeeper" regarding expert testimony, which requires the court to determine whether a party's proffered expert testimony is relevant and reliable. *Daubert*, 509 U.S. at 589. This requires the court to make three findings:

> [1] the witness must be qualified "as an expert by knowledge, skill, experience, training, or education," Fed. R. Evid. 702; [2] the expert's reasoning or methodology underlying the testimony must be scientifically reliable, *Daubert*, 509 U.S. at 592-93; and [3] the

testimony must assist the trier of fact to understand the evidence
or to determine a fact in issue. Fed. R. Evid. 702.

*Ervin v. Johnson & Johnson, Inc.*, 492 F.3d 901, 904 (7th Cir. 2007). Moreover, district courts "'enjoy wide latitude and discretion when determining whether to admit expert testimony.'" *Id.* (quoting *Wintz By & Through Wintz v. Northrop Corp.*, 110 F.3d 508, 512 (7th Cir. 1997)).

  A. Kuehn's Qualifications

Plaintiffs argue that Kuehn's B.S. in mechanical engineering coupled with his experience in vehicle accident reconstruction qualifies him to opine as an expert[2] that a possible cause of the accident is a possible design defect in a mechanical component of the ATV, that is, a defect in the front differential locking system. Unsurprisingly, defendant disagrees. Defendant points out that Kuehn has no specialized knowledge or skills regarding ATV design or ATV roll-over accidents as why he is unqualified to provide the proffered opinions.

The Seventh Circuit Court of Appeals observes that

[a]n expert's opinion is helpful only to the extent the expert draws
on some *special* skill, knowledge, or experience to formulate that
opinion; the opinion must be an expert opinion (that is, an
opinion informed by the witness' expertise) rather than simply an
opinion by a purported expert.

*Ancho v. Pentek Corp.*, 157 F.3d 512, 518 (7th Cir. 1998) (emphasis added) (internal quotations and citations omitted). The Seventh Circuit further noted that

---

[2] As a placeholder, I note that although plaintiffs refer to Kuehn's statements as an expert's "opinion," Kuehn himself is chary of characterizing so strongly his theories as to possible causes of the rollover. *See* Kuehn Aff. ¶ 6. I address this issue below.

5

> [j]ust as a qualified and board certified heart surgeon does not possess sufficient knowledge of orthopaedic medicine to render an expert opinion on spine surgery, likewise we agree with the trial court's ruling that a mechanical engineer such as Lobodzinski lacks qualifications to give expert testimony about plant reconfiguration.

157 F.3d at 519 (citations omitted). Addressing a proffered expert's qualifications involves "comparing the area in which the witness has *superior* knowledge, skill, experience, or education with the subject matter of the witness's testimony." *Carroll v. Otis Elevator Co.*, 896 F.2d 210, 212 (7th Cir. 1990) (emphasis added).

Plaintiffs' argument that Kuehn's accident reconstruction experience qualifies him as an expert misses the mark under the circumstances presented here: Kuehn did not attempt to reconstruct this incident in an effort to determine how the accident occurred. (*See* Kuehn Dep. at 91-92.). "Good credentials may be a necessary condition for expert testimony but are not a sufficient condition," *United States v. Moore*, ___ F.3d ___, 2008 WL 818007, (March 27, 2008), Case No. 06-1355, slip op. at 7; "Facts are essential to testimony based on . . . scientific and technical expertise," *id.* at 5-6. Kuehn's report and deposition reveal that he merely is providing theories as to what might have occurred based on his inspection of the ATV, the accident site and his review of reports. Therefore, the crux of Kuehn's opinion appears to stem from his mechanical engineering background.

This leaves Kuehn's mechanical engineering background as the possible basis on which to qualify him as an expert. Plaintiffs argue that Kuehn's training as a mechanical engineer and his work with HVAC and plumbing systems for twelve years qualifies him to testify regarding "a purely mechanical component" on the ATV. However, having a general background in mechanical engineering does not qualify a witness to testify as an expert regarding everything

6

within the field of mechanical engineering. *See Ancho*, 157 F.3d at 518-19; *see also Shreve v. Sears, Roebuck & Co.*, 166 F. Supp. 2d 378, 392 (D. Md. 2001) ("[A]n expert who is a mechanical engineer is not necessarily qualified to testify as an expert on any issue within the vast field of mechanical engineering.").

Kuehn theorizes in his expert report and deposition regarding a possible defect in the ATV's front locking differential. Nothing plaintiff has proffered supports that Kuehn has superior or special knowledge, skill, experience or education regarding locking differentials or even ATV mechanics in general. To the contrary, Kuehn readily admits that he: (1) never designed any component of an ATV, (2) never worked for an ATV manufacturer; (3) never designed a differential lock system; (4) never worked for a manufacturer of a differential lock mechanism; (5) never testified in an ATV case; and (6) never had any education or training in ATV repair or maintenance. Such an absence of special or superior knowledge, skills or experience regarding locking differentials and ATVs demonstrates that Kuehn is not qualified to provide expert testimony regarding the issues in this case. *See Tyus v. Urban Search Managment*, 102 F.3d 256, 263 (7th Cir. 1996) (A court "must determine whether the proffered testimony is based upon the expert's special skills."). Accordingly, under Fed. R. Evid. 702 and *Daubert*, Kuehn is not qualified to be an expert regarding the issues in this case.

Although this conclusion is sufficient to decide the issue, for completeness's sake I am addressing the other salient factors when determining the admissibility of an expert opinion; this doesn't help plaintiffs.

B. <u>Reliability of Kuehn's Report</u>

Even if I were to assume, *arguendo*, that Kuehn was qualified to testify as an expert regarding the disputed issues in this case, I still would exclude his expert testimony because it is not sufficiently reliable. Kuehn theorizes that although the ATV's lever for the locking differential was in the "unlocked" position, the differential actually may have been "locked" which would have incorrectly informed plaintiff regarding the status of the front end differential. If the differential was locked, this would be akin to having a solid axle and could have caused the ATV to roll if traction under the front wheels increased unexpectedly during a turn. But Kuehn admits that his theory regarding what could have caused the differential lock to delay in unlocking cannot be proved or disproved. (Kuehn Dep. at 84-85.) Under *Daubert*, one criterion to consider in addressing reliability is whether the testimony is subject to verification through testing. 509 U.S. at 593-94. By Kuehn's own admission, his testimony was not–and cannot– be verified through testing. The only time Kuehn claims to have observed a delay in the ATV's differential actuation was when he was alone with it. When he attempted to replicate this delay with others present, it didn't happen. Kuehn can only guess why this would be so. As the court noted in *United States v. Moore*, *supra*, Kuehn "does not have–or at least did not explain–any way to avoid the GIGO problem. (Garbage in, garbage out)." Slip op. at 6.

Further, although Kuehn attempted to use the scientific method to eliminate all but one cause of the accident, he reached a stalemate with three potential causes: (1) operation of the differential lock; (2) terrain and traction; and (3) operator error. At his deposition Kuehn agreed that he could not opine regarding which of these three possibilities, singly or in combination, was

the actual cause of the accident. (Transcript of March 11, 2008 deposition, dkt. 43, Exh. C, at 96.) Kuehn also could not say that a product defect caused the accident. (*Id*. at 96-97.)

Another *Daubert* criteria asks what the known or potential rate of error regarding the conclusions in the testimony. 509 U.S. at 593-94. Kuehn states unequivocally that his theory regarding the most probable causes of the accident is *not* an opinion: "I also did indicate that from the available information, one of the possibilities (differential operation) was most probable, but was not able to elevate this possibility to the level of an opinion (greater than 50%)." (Kuehn Aff. at ¶ 6.) In other words there is at least a 50% chance that Kuehn's theory is wrong. He cannot and will not commit to asserting that it is more likely than not that the ATV's differential caused the rollover. This high level of potential error establishes that the testimony is unreliable.

Additionally, the *manner* in which Kuehn chose a defect in the differential locking system as being the most probable possible cause is not reliable. He placed differential defect ahead of operator error as the most probable possible cause in part by relying on plaintiff being a safe ATV driver as well as a veteran ATV mechanic. However, Kuehn admits that he has no facts regarding how plaintiff was driving the ATV at the time of the accident. He does not account for other witness's statements that Kuehn drove out of the shop at a high speed, or that Kuehn was not wearing a helmet when opining that plaintiff must have been a safe driver. This is a struthious rather than scientific approach to determining causation. As the court noted in *United States v. Moore*, slip op. At 6, we have a GIGO problem here.

Finally, although Kuehn had over a year in between his examinations of the ATV and the deadline for his report, he never attempted to test his theories. He never tested his theory that

9

the differential lock would remain locked despite the lever being in the unlocked position, even though this theory was impeached when the locking system worked as expected during Kuehn's second inspection in the presence of witnesses. Kuehn never tested his theory that debris on the locking cable could prevent the locking system from unlocking. He never devised a test to determine what speed was necessary to role an ATV with a locked front differential.

"A court is expected to reject 'any subjective belief or speculation.'" *Ammons v. Aramark Uniform Services, Inc.*, 368 F.3d 809, 816 (7th Cir. 2004), quoting *Chapman v. Maytag Corp.*, 297 F.3d 682, 687 (7th Cir. 2002)). On Kuehn's own admission, there is a 50% or greater probability that Kuehn's core theory regarding the ATV's differential locking system is incorrect. Regardless whether the conclusions in Kuehn's report and deposition testimony are labeled opinions or theories, they are not sufficiently reliable to be presented to a jury as expert testimony. It the court's duty as gatekeeper to ensure that we have an expert, "not just a hired gun." *Tyus*, 102 F.3d at 263. Although Kuehn's admirable candor prevents him from being mistaken for Chris Adams or Bernardo O'Reilly, Rule 702 bars admission of his testimony.

ORDER

IT IS ORDERED that defendant Arctic Cat Inc.'s motion to excluded the opinions, evidence and testimony of plaintiffs expert witness Jeffrey W. Kuehn (dkt. 42) is GRANTED.

Entered this 18th day of April, 2008.

BY THE COURT:

/s/

STEPHEN L. CROCKER
Magistrate Judge